911 So.2d 234 (2005)
STATE of Florida, Appellant,
v.
Daniel CARLSON, Appellee.
No. 2D04-2582.
District Court of Appeal of Florida, Second District.
September 28, 2005.
*235 Charles J. Crist, Jr., Attorney General, Tallahassee, and Tiffany Gatesh Fearing, Assistant Attorney General, Tampa, for Appellant.
James Marion Moorman, Public Defender, and Tosha Cohen, Assistant Public Defender, Bartow, for Appellee.
STRINGER, Judge.
The State appeals the downward departure sentence imposed after the trial court granted Daniel Carlson's motion to mitigate sentence. Because the trial court failed to make any written or oral findings to support the downward departure sentence, we reverse and remand for further proceedings.
In May 2003, the State charged Carlson with one count of DUI involving serious bodily injury, a third-degree felony, and one count of DUI involving damage to persons or property, a first-degree misdemeanor, after Carlson hit two pedestrians while driving his car. On November 25, 2003, Carlson pleaded guilty to both offenses in an open plea.
Carlson's Criminal Punishment Code scoresheet showed a lowest permissible sentence of 34.8 months in prison. At the sentencing hearing held March 1, 2004, the State urged the court to impose prison time, noting that Carlson had left the scene of the accident to purchase more alcohol and that his blood alcohol level shortly after the accident was .242. In addition, the State noted the serious injuries sustained by both pedestrians. Based on these facts, the State requested a 36-month prison sentence followed by two years' probation.
Carlson requested a downward departure sentence of either community control, probation, or both. Carlson submitted two letters, one from his father and one from his pastor. These letters expressed the writers' opinions that Carlson was truly sorry for the events that occurred and was *236 taking steps to turn his life around and overcome his alcohol addiction. Carlson also argued that he should be entitled to a downward departure sentence because he had already spent 300 days in jail; he had family support; since his release from jail, he had a job and was attending school, he was attending AA meetings, and he had not been in any trouble. Carlson's counsel also represented that Carlson was extremely remorseful about the incident. Carlson's father testified that his son was a changed person after spending eight months in jail and that society and the State would be better served if Carlson was allowed to get on with his life.
After considering this evidence and argument, the trial court stated, "Well, I don't see any reason why the Court should go below the guidelines. As a matter of fact, I think that, if I could, I'd probably sentence you to more than what you could get here." The trial court then sentenced Carlson to three years in prison followed by two years' probation on the felony count, and a concurrent one year of probation on the misdemeanor count. In addition, the trial court imposed various costs and awarded restitution in the amount of $73,791.89.
More than one month after sentencing, on April 8, 2004, Carlson filed a motion to mitigate or modify sentence. At a hearing on this motion, the court heard testimony from James Fry, a licensed mental health counselor. Mr. Fry testified that he had seen Carlson on two occasions and that he believed that Carlson was an excellent candidate for therapy. The remainder of the evidence presented was simply a reiteration of what had been presented at the original sentencing hearing. After offering this evidence, Carlson asked the trial court to suspend his three-year prison term and sentence him to community control followed by probation. The State argued that the original sentence was appropriate given the nature of the charges and the seriousness of the injuries.
At the conclusion of the hearing, the trial court reserved ruling. Subsequently, on May 24, 2004, the trial court entered an order granting Carlson's motion to mitigate his sentence. The trial court suspended the original sentence and imposed a sentence of two years' community control followed by two years' probation. In the order granting Carlson's motion, the trial court made no findings of any kind and did not provide any written reasons for imposing the downward departure sentence. In addition, the trial court did not convene a new sentencing hearing. Rather, the trial court simply entered an amended judgment and sentence reflecting the downward departure sentence. The State then filed this timely appeal.
Pursuant to section 921.0026(1), Florida Statutes (2003), the trial court may not impose less than the lowest permissible sentence required by the Code unless the defendant establishes a valid basis for departure. If the defendant establishes such a basis, the trial court must file written reasons that support the downward departure sentence within seven days after the date of sentencing. § 921.00265(2); see also State v. Ayers, 901 So.2d 942, 945 (Fla. 2d DCA 2005). If the trial court fails to file written reasons, a downward departure sentence may nevertheless be affirmed if the trial court has made oral findings supporting the departure sentence on the record at the sentencing hearing. § 921.00265(2); Pease v. State, 712 So.2d 374 (Fla.1997). In the absence of either written or oral findings, however, a downward departure sentence is improper. § 921.0026(1).
In this case, the trial court never filed written reasons for the downward departure sentence that it imposed. Further, *237 because the trial court reserved ruling at the end of the hearing on Carlson's motion to mitigate sentence, there are also no oral findings supporting the imposition of the downward departure sentence. In the absence of either written or oral findings supporting the downward departure, Carlson's sentence must be reversed.
Carlson contends that the State failed to preserve this error for review by failing to either object or file a motion pursuant to Florida Rule of Criminal Procedure 3.800(b)(2). Neither of these arguments have merit. First, because the trial court reserved ruling at the end of the hearing on Carlson's motion to mitigate and did not hold a resentencing hearing after granting Carlson's motion, the State was never provided with the opportunity to object to the downward departure sentence before it was actually imposed. Thus, the State did not "fail to object" because it was never given the opportunity to do so.
Second, rule 3.800(b) does not permit the State to file a motion to preserve this type of error. The State may file a motion pursuant to rule 3.800(b) "only if the correction of the sentencing error would benefit the defendant or to correct a scrivener's error." Fla. R.Crim. P. 3.800(b). Correction of a downward departure sentence neither corrects a scrivener's error nor benefits the defendant. See State v. Clark, 770 So.2d 237 (Fla. 4th DCA 2000); State v. Henriquez, 717 So.2d 1087, 1088 n. 3 (Fla. 3d DCA 1998). Thus, the State could not preserve this error for review using rule 3.800(b).
At the hearing on Carlson's motion to mitigate sentence, the State argued that no downward departure sentence was warranted in this case and that the original sentence was appropriate. Given the trial court's subsequent decision to reserve ruling at the end of that hearing and its decision not to hold a resentencing hearing, the State was never afforded an opportunity to object to the imposition of this downward departure sentence. Under these hopefully unique circumstances, we hold that the State's objection to the downward departure sentence was preserved for appeal.
Because the trial court failed to make either written or oral findings to support the imposition of a downward departure sentence in this case, we reverse Carlson's sentence and remand for resentencing. On remand, the trial court may again impose a downward departure sentence if it makes oral or written findings legally sufficient to support such a sentence.
Reversed and remanded for resentencing.
NORTHCUTT and SILBERMAN, JJ., Concur.